[ECF No. 23]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STULTZ G. TAYLOR,<br><br>                **Plaintiff,**<br><br>   v.<br><br>SHEET METAL WORKERS'<br>NATIONAL PENSION FUND et al.,<br><br>                **Defendants.** | Civil No. 24-4321 (CPO/EAP) |

**OPINION**

This matter comes before the Court on the Motion of Plaintiff Stultz G. Taylor seeking discovery outside of the administrative record in this action brought under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), ECF No. 23 ("Pl.'s Br."). Defendants Sheet Metal Workers' National Pension Fund (the "Fund") and the Board of Trustees of the Sheet Metal Workers' National Pension Fund, as Administrator of the Pension Plan of the Sheet Metal Workers' National Pension Fund (the "Board of Trustees") (collectively, "Defendants") opposed the Motion, ECF No. 24 ("Defs.' Opp'n"), and Plaintiff filed a Reply, ECF No. 26 ("Pl.'s Reply"). The Court has reviewed the parties' submissions and held oral argument on September 5, 2024. For the reasons that follow, Plaintiff's request for discovery is **DENIED**.

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's Complaint.

Plaintiff alleges that he began working as a sheet metal worker with Local Union Number 43 immediately after high school. *See* ECF No. 1 (Compl.) ¶ 11. From 1979 through December

2018, Plaintiff was employed as a union sheet metal worker, and from 1979 to 2012, he worked for Bernal Mechanical Contractors ("Bernal Mechanical"). *Id.* ¶¶ 12, 14. While employed at Bernal Mechanical, Plaintiff obtained his New Jersey HVACR Master Certification and License. *Id.* ¶¶ 12-13.

In April 2013, Plaintiff and his wife Sandra Taylor founded STS Sheet Metal, Inc. ("STS"), located in Vineland, New Jersey, with each owning fifty percent of the business. *Id.* ¶¶ 15, 17. Plaintiff was and remains the corporate president of STS. *Id.* ¶ 16. Plaintiff asserts that, because New Jersey State regulations require that an HVAC contractor employ an executive officer with an HVACR Master License, he acts as that bona fide representative for STS. *Id.* ¶¶ 19-20, 22-24.

In December 2018, Plaintiff claims that he applied to the Fund for an early retirement pension to be effective January 1, 2019, at which time he would be fifty-nine years old. *Id.* ¶ 25. Aware that he may be ineligible to receive pension benefits until reaching age sixty-two, Plaintiff alleges that in his application, he advised the Fund that he was retiring from sheet metal work and requested confirmation that he could continue to perform office work with STS without affecting his pension eligibility. *Id.* ¶¶ 26-27. The Fund allegedly responded that Plaintiff had thirty-nine years and three months of Future Service Credit and that his pension benefit at age sixty-five would be $4,663 per month, subject to reduction if he took his pension before age sixty-five. *Id.* ¶¶ 28-29. Plaintiff also alleges that he confirmed with the Fund that when he decided to take his earned pension benefit, he would only need to submit a reactivation form and not another application. *Id.* ¶ 31.

Plaintiff performed office work at STS for three more years, and in December 2021, he submitted a reactivation form for his pension benefits to be effective January 1, 2022. *Id.* ¶¶ 32-33. At that time, he would be sixty-two years old, and he believed he would be eligible for his early retirement pension. *Id.* According to the Complaint, the Fund advised that Plaintiff would be notified of his qualification by the end of March 2022. *Id.* ¶ 34.

2

Plaintiff alleges that while the Fund investigated Plaintiff's qualification for pension benefits, it required Plaintiff to be paid as a sheet metal worker and that STS make contributions to the Fund based upon the hours that he worked. *Id.* ¶¶ 27, 39-41. According to Plaintiff, the Fund investigated various issues, including STS's lack of pension contributions for Plaintiff from 2019 through 2021, continuing contributions to the Fund from STS, Plaintiff's ownership of STS, his part-time work at STS, and the withdrawal of a separate and distinct entity, Bernal Mechanical, from the Fund. *Id.* ¶ 42.

In January 2022, the Fund expressed concern regarding the stoppage of contributions for Plaintiff in 2019 through 2021 and the possibility of an Owner-Member ("OM") requirement, even though Plaintiff was not working as a sheet metal worker. *Id.* ¶ 43. The Complaint avers that internal fund correspondence also reflected a concern that granting Plaintiff's pension request was "too risky" because the Fund was concerned that Plaintiff would "close" STS and continue his business under Bernal Mechanical. *Id.* ¶ 44. According to Plaintiff, he advised the Fund that STS and Bernal Mechanical were separate entities; that Bernal Mechanical was a one-man plumbing contractor; and that he had no intention of closing STS. *Id.* ¶ 45.

In May 2022, the Fund again raised the issue of Plaintiff's employment from December 2018 through December 2021, stating its concern that Plaintiff was engaged in Covered Employment. *Id.* ¶¶ 48-49. According to Plaintiff, he reassured the Fund that he had only been engaged in office work. *Id.* ¶ 50. On May 2, 2022, the Fund allegedly advised Plaintiff that he could work up to forty hours per month and remain eligible to collect his pension because he continued to be an owner of STS. The Fund then requested information on Plaintiff's work from 2019 through 2021; who would be performing his former duties; and the details of his continued work for STS. *Id.* ¶ 53.

When Plaintiff did not receive a decision on his qualification for pension benefits within six months, Plaintiff alleges that he emailed the Fund on May 23, 2022. He claims that, in response,

the Fund "arbitrarily reversed" its prior position that Plaintiff was eligible for an early retirement pension and determined that he did not qualify because he continued to own and perform clerical work for STS, which constituted disqualifying employment. *Id.* ¶¶ 59-60.

On July 8, 2022, Plaintiff's counsel wrote a letter to the Fund advising it of Plaintiff's intention to appeal and providing the reasons that the Fund's decision was erroneous, including: (1) Plaintiff was not an "Owner-Member" because he was not included in a unit of employees covered by the collective bargaining agreement and did not perform work covered by the collective bargaining agreement; (2) Plaintiff then-worked part-time for STS in an office position for no more than forty hours per month; (3) at the Fund's direction, STS had been making pension contributions on Plaintiff's behalf; and (4) Plaintiff accrued his pension benefits by working in Covered Employment with employers who made contributions to the Fund for him for more than thirty-nine years. *Id.* ¶ 61. On that same day, the Fund acknowledged Plaintiff's appeal to the Board of Trustees. *Id.* ¶ 62.

On November 4, 2022 and December 8, 2022, Plaintiff's counsel wrote additional letters to the Board of Trustees regarding Plaintiff's appeal. *Id.* ¶¶ 63-64. Plaintiff alleges that the Board of Trustees denied his appeal—without allowing Plaintiff or his counsel to be present—because Plaintiff's employment with STS was disqualifying employment. *Id.* ¶¶ 65-71.

## PROCEDURAL HISTORY

On March 28, 2024, Plaintiff filed a Complaint in this Court setting forth the following causes of action: (1) failure to provide ERISA benefits (Count I), ¶¶ 73-78; (2) breach of fiduciary duty (Count II), *id.* ¶¶ 79-93; (3) estoppel (Count III), *id.* ¶¶ 94-108; and (4) failure to provide a full and fair review (Count IV), *id.* ¶¶ 109-117.

On June 17, 2024, the Court held an initial scheduling conference. *See* ECF No. 20. At that time, the parties raised a dispute about the propriety of discovery in this administrative record review

case.  The Court ordered the parties to provide briefing on the issue and set a briefing schedule.  *See id.* ¶ 2.  In accordance with that Order, on July 12, 2024, Plaintiff filed a letter in support of his request for discovery outside of the administrative record.  *See* ECF No. 23.  Defendants filed a responsive letter on July 30, 2024.  *See* ECF No. 24.  On August 6, 2024, Plaintiff filed a reply.  *See* ECF No. 25.  On September 5, 2024, the Court converted the present dispute to a motion to compel and heard oral argument on the motion.  *See* ECF No. 23.  This matter is now ripe for disposition.

## STANDARD OF REVIEW

An entity administering an ERISA plan must "provide a 'full and fair review' of claim denials."  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989) (quoting 29 U.S.C. § 1133(2)).  A participant or beneficiary who disagrees with an administrator's decision may bring an action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

In *Firestone Tire and Rubber Company v. Bruch,* the United States Supreme Court explained that, in the context of an action under 29 U.S.C. § 1132(a)(1)(B), courts reviewing an administrator's benefits decision should apply a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  489 U.S. at 115.  Under those circumstances, "a deferential standard of review" is appropriate because "'[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion.'"  *Id.* at 111 (quoting Restatement (Second) of Trusts § 187 (1959)).

Under this abuse-of-discretion standard,[1] a court should overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffmann-La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993) (cleaned up), *abrogated in part on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Further, "the court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." *Id.* (internal quotation marks omitted); *see Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 387 (3d Cir. 2000) (internal quotation marks omitted). A deferential review "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation." *Conkright v. Frommert,* 559 U.S. 506, 517 (2010). Nevertheless, "[w]hile review under the arbitrary and capricious standard is extremely deferential, it is not without 'some teeth' and does not mean 'no review.'" *Clauss v. Plan*, 196 F. Supp. 3d 463, 474 (M.D. Pa. 2016) (quotation omitted).

As "the proper standard of review of a trustee's decision depends on the language of the instrument creating the trust," the court must look to the terms of the Fund's Plan Document and Trust Document to determine whether the plan administrator[2] is granted discretionary authority and thus, whether an abuse-of-discretion standard of review applies. *Conkright*, 559 U.S. at 512; *Luby v. Teamsters Health, Welfare, & Pension Trust Funds,* 944 F.2d 1176, 1180 (3d Cir. 1991). No "magic words" must be used to grant discretion to the plan administrator. *Luby*, 944 F.2d at 1180

---

[1] "In the ERISA context, an 'abuse-of-discretion' standard of review is used interchangeably with an 'arbitrary and capricious' standard of review." *Viera v. Life Ins. Co. of N. Am.*, 642 F.2d 407, 413 n.4 (3d Cir. 2011) (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010)).

[2] Here, the Fund is administered by the Board of Trustees, which has the "sole discretionary power" to determine the application and interpretation of the Plan Document, the entitlement to any benefit, and has delegated to an Appeals Committee the authority to make final and binding determinations on all appeals. *See* Defs.' Answer, ECF No. 10, ¶ 5; *see also* Plan Document, Section 8.04, available at https://perma.cc/VN8T-TVR2 (last visited Oct. 11, 2024).

(quotation omitted). If the policy language is ambiguous, the Court must construe it in favor of the insured. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011).

The Plan Document here clearly grants discretionary authority to Defendants. Section 8.03 of the Plan Document states that "[t]he Trustees shall have the sole and absolute power, authority and discretion to determine . . . entitlement to or amount of a pension." https://perma.cc/VN8T-TVR2 (last visited Oct. 11, 2024). This provision triggers an abuse-of-discretion standard of review. *See, e.g., Nally v. Life Ins. Co. of N. Am.,* 299 F. App'x 125, 127-28 (3d Cir. 2008) (finding that abuse of discretion applied where the summary plan description stated that the benefits review committee "shall have the discretionary authority to determine eligibility for plan benefits and to construe the terms of the plan, including the making of factual determinations."); *White v. Unumprovident,* No. 03-5845, 2005 WL 1683735, at *11 (D.N.J. July 18, 2005) (finding that the plan expressly conferred discretion to insurer where the Plan terms stated, "[i]n making any benefits determination under this policy, the Company shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy").

## **DISCUSSION**

The question before the Court is whether Plaintiff, in challenging Defendants' decision on his early retirement pension benefit under an abuse-of-discretion standard, may pursue discovery outside the administrative record.

"By enacting ERISA, Congress manifested its intent to 'provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'" *Sivalingam v. Unum Provident Corp.*, 735 F. Supp. 2d 189, 194 (E.D. Pa. 2010) (quoting *Perry v. Simplicity Eng'g, a Div. of Lukens Gen. Indus., Inc.*, 900 F.2d 963, 967 (6th Cir. 1990)). Thus, when a plaintiff alleges that a plan administrator abused its discretion in making a benefits decision, the court must generally limit its review to the administrative record; that is, to the "evidence that was before the

administrator when [it] made the decision being reviewed." *Id.* (quoting *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997)). This restricted review achieves congressional intent by encouraging parties to resolve benefit claims internally, thereby avoiding the costs of litigation. *Dandridge v. Raytheon*, No. 08-4793, 2010 WL 376598, at *2 (D.N.J. Jan. 26, 2010) (citing *Grossmuller v. Int'l Union*, 715 F.2d 853, 857 (3d Cir. 1983)). In addition, ERISA requires claimants to exhaust administrative remedies prior to filing suit, resulting in a full and complete administrative record that eliminates the need for discovery. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002); *Dandridge*, 2010 WL 376598, at *3.

Nonetheless, "[e]vidence beyond the administrative record may in certain circumstances be relevant and admissible as to issues that were not before the plan administrator—such as trustee conflict of interest, bias, or a pattern of inconsistent benefits decisions." *Otto v. W. Pa. Teamsters & Emps. Pension Fund*, 127 F. App'x 17, 21 n.7 (3d Cir. 2005). In cases where a plaintiff plausibly alleges a conflict of interest, a court may allow limited discovery beyond the administrative record. *Hart v. Bd. of Trustees, United Food & Comm. Workers Union Local 152 Retail Meat Pension*, No. 17-12320, 2019 WL 13258890, at *6 (D.N.J. Mar. 29, 2019).

In this regard, the Third Circuit has identified two types of conflicts that may warrant discovery beyond the administrative record: structural conflicts and procedural conflicts. *See Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 276 (3d Cir. 2021).

A structural conflict analysis focuses on the role of financial incentives in the plan's administration, such as where the same entity administers and pays the benefits due under the plan. *Id.* Here, Plaintiff does not, and cannot allege, any structural conflict. In this case, benefits decisions are made by this multi-employer benefit plan, where a committee of one employer and one union trustee makes the benefits decisions, and such benefits are paid from a trust funded by contributions

8

and investment income.  Defs.' Br. at 2.  This arrangement simply does not implicate a structural conflict.

A procedural conflict analysis "examines the presence or absence of irregularities in the handling of benefit claims," or the way in which the administrator arrives at its decision, such as an unexplained reversal of position, bias, "self-serving selectivity" in the use and interpretation of expert reports, or a pattern of inconsistent benefit decisions.  *Id.*; *see also Dowman v. Chubb Corp.*, No. 16-8129, 2018 WL 2973381, at *4 (D.N.J. June 11, 2018); *Sivalingam*, 735 F. Supp. 2d at 196.  "'[T]o establish that additional discovery is warranted, a plaintiff must—at the very least—make 'a good-faith allegation of a procedural irregularity . . . in the review process.'"  *Hart*, 2019 WL 13258890, at *8 (quoting *Neal v. Life Ins. Co. of N. Am.*, No. 16-1146, 2017 WL 321497, at *3 (W.D. Pa. Jan. 23, 2017) (citation omitted)); *see also Muccino v. Long Term Disability Income Plan for Choices Eligible Emps. of Johnson & Johnson*, No 11-3641, 2012 WL 2119152, at *11 (D.N.J. June 11, 2012) ("[D]iscovery should be allowed when a plaintiff presents a good faith basis for alleging some bias or that a conflict infected the administrator's determination."); *Dandridge*, 2010 WL 376598, at *6 ( "[S]ome discovery into alleged procedural irregularities is permitted in ERISA cases, but only when the party seeking discovery has made at least some minimal showing of bias or irregularity that could have impacted the administration of the claim.").  Mere "evanescent allegations" or "bald allegation[s] of wrongdoing or alleged bias" are insufficient to obtain discovery into procedural conflicts.  *Dandridge*, 2010 WL 376598, at *5; *see also Muccino*, 2012 WL 2119152, at *11 (rejecting plaintiff's examples of procedural irregularities because plaintiff did not provide any factual basis for the assertions); *Killian v. Johnson & Johnson*, No. 07-4902, 2009 WL 537666, at *4 (requiring a "good-faith allegation of a procedural irregularity or bias that could have been found within the administrative record to warrant the additional discovery-related work").  Moreover, "to the extent Plaintiff seeks discovery into the *merits* of the [Committee's] claim

9

determination, it is clear that such discovery is prohibited. *Dandridge*, 2010 WL 376598, at *3 (emphasis in original). Finally, any such discovery "must be circumscribed so as to preserve ERISA's goal of providing an inexpensive and expeditious means of resolving benefit disputes." *Sivalingam*, 735 F. Supp. 2d at 196.

To justify his request for discovery beyond the administrative record, Plaintiff posits four alleged "procedural conflicts," none of which the Court finds convincing.[3] First, Plaintiff contends that discovery is appropriate here because he has alleged facts outside of the record in support of his ERISA claim that Defendants have disputed. *See* Pl.'s Br. at 2-3; Pl.'s Reply 3-5. For example, Plaintiff argues that the Fund considered matters outside of the administrative record, including STS's lack of pension contributions for Plaintiff from 2019 through 2021, STS's continuing contributions to the Fund, Plaintiff's ownership of STS, his part-time work at STS, the withdrawal of Bernal Mechanical from the Fund, the stoppage of contributions for Plaintiff from 2019 through 2021, and an Owner-Member requirement despite that Plaintiff was not working as a sheet metal worker. *See* Pl.'s Reply at 3. Moreover, Plaintiff asserts that the Fund gave him advice that materially misrepresented his eligibility for early retirement pension benefits. Pl.'s Br. at 3. Plaintiff claims that because these allegations involve evidence outside the administrative record and clearly show that Defendants "actions were arbitrary and capricious," discovery is warranted. Pl.'s Br. at 2-3; Pl.'s Reply at 3.

---

[3] Notably, Plaintiff's opening brief raised only the first argument, with the remaining three arguments being raised in his reply brief. A reply brief is not the appropriate time to raise a new argument. *See Laborer's Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief . . . "); *In re BlackRock Mut. Funds Advisory Fee Litig.*, 327 F. Supp. 3d 690, 736 n.42 (D.N.J. 2018) (explaining that "courts ordinarily decline to consider arguments raised for the first time in a reply brief . . ."), *aff'd,* 816 F. App'x 637 (3d Cir. 2020). Nonetheless, for the sake of comprehensiveness, the Court will address all of Plaintiff's arguments.

As set forth in the Complaint, however, these identical allegations were before the Fund and made part of the administrative record. *See* Compl. ¶ 42 (listing these facts as matters that the Fund considered in reaching its decision). The identified facts all involve the underlying basis for the benefits determination and do not implicate any procedural irregularity outside the administrative record. While Plaintiff alleges that "discovery is necessary to aid the Court in determining the reasonableness of the Fund's decision to deny Plaintiff's pension," Pl.'s Br. at 5, this inquiry into the merits of the actual claim determination is precisely the type of inquiry that ERISA shields from expansive discovery.

Moreover, to the extent Plaintiff failed to produce all relevant information to the Fund or the Board of Trustees regarding these matters during the administrative review process, he may not now use the discovery process to develop the record. When a plaintiff alleges that a plan administrator failed to provide ERISA benefits, the court generally limits its review to the administrative record, meaning the "evidence that was before the administrator when [it] made the decision being reviewed." *Mitchell*, 113 F.3d at 440. Otherwise, a Plaintiff could simply withhold evidence relevant to his claims to create a basis for appealing an ERISA decision—a tactic which runs contrary to Congress's stated desire to encourage parties to resolve benefit claims internally. *See Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010) ("Materials that the parties failed to put before the administrator are not usually relevant to the inquiry of whether the administrator abused its discretion. Thus, under most circumstances, 'the record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during litigation.'" (quotation omitted)).

Second, Plaintiff contends that a potential conflict of interest/bias exists due to Defendants' denial of Plaintiff's pension based, in part, on Plaintiff's work for Bernal Mechanical from 1979 to 2012, Bernal's withdrawal from the Fund, and the Fund's concern that Plaintiff would close STS

11

and continue his business under Bernal Mechanical. Compl. ¶¶ 42-45. Plaintiff alleges that "[t]he conflict of interest/bias comes into focus when one learns that Defendants have sued Bernal Mechanical for withdrawal liability, seeking in excess of $1.6 million," that Defendants contend that Bernal Mechanical withdrew from the Fund in 2013, when Plaintiff left Bernal Mechanical and started STS. Pl.'s Reply at 2.

Plaintiff, however, fails to explain how these facts—even taken as true—reflect any bias or other procedural irregularity. In considering procedural factors, the focus is whether in the particular case at issue, "the administrator has given the court reason to doubt its fiduciary neutrality." *Verme-Gibboney v. Hartford Ins. Co.*, No. 11-3796, 2013 WL 6633084, at *3 (D.N.J. Dec. 16, 2013). "[B]ald allegation[s] of wrongdoing or alleged bias" are insufficient to obtain discovery into procedural conflicts. *Dandridge*, 2010 WL 376598, at *5; *see also Muccino,* 2012 WL 2119152, at *11 (D.N.J. June 11, 2012) (rejecting plaintiff's examples of procedural irregularities because plaintiff did not provide a good faith factual basis for alleging bias). Nothing in Plaintiff's argument gives the Court any reasonable basis to doubt Defendants' fiduciary neutrality or to believe that Defendants engaged in some misconduct when rendering Plaintiff's benefits decision.

Third, Plaintiff contends that he has raised a reasonable suspicion of misconduct because on May 23, 2023, Plaintiff emailed the Fund requesting a release of his pension benefits that "the Fund had determined that Plaintiff was eligible for," and later that same day, it "arbitrarily reversed its position" and "determined that Plaintiff did not qualify for an Early Retirement Pension."[4] Pl.'s

---

[4] The Third Circuit has clarified that a "reversal of decision" situation that potentially creates a procedural conflict occurs where an administrator awards disability benefits and then reverses that decision without receiving any new medical information to support this change in position. *Miller v. Am. Airlines*, 632 F.3d 837, 848 (3d Cir. 2011); *see also Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, 796 F. Supp. 2d 568, 586 (D.N.J. 2011) (noting that any decision to terminate benefits must be based on additional medical evidence not originally reviewed). The present case involves retirement benefits, not disability benefits, and thus does not implicate the same concerns.

Reply at 2-3. Nothing in Plaintiff's Complaint, however, suggests that the Fund had ever made a final determination that Plaintiff was eligible for the requested pension benefits, which it then reversed on May 23, 2023. Indeed, according to the Complaint, Plaintiff reactivated his application for pension benefits in December 2021. Compl. ¶ 33. "From January through April of 2022, the Fund investigated the qualification of [Plaintiff] to receive his pension benefits," during which time the Fund repeatedly expressed various concerns with Plaintiff's application. *Id.* ¶¶ 39-53. The Complaint then alleges that, "[h]aving provided all of the information requested by the Fund, and the passage of nearly six months *without a decision on his qualification for pension benefits*, on May 23, 2022, [Plaintiff] emailed the Fund, advised the Fund that he had complied with all of the Fund's requests and directions, and requested the release of his pension benefits." *Id.* ¶ 58 (emphasis added). That same day, the Fund sent a letter stating that upon completion of its investigation, it determined that Plaintiff did not qualify for an early retirement pension. *Id.* ¶ 60. Plaintiff's purported evidence that the Fund had at some point prior to that date internally approved Plaintiff's application, simply reflects the decision-making process and does not raise "a reasonable suspicion of misconduct" sufficient to warrant discovery.

Finally, Plaintiff contends that Counts II through IV of his Complaint allege non-ERISA claims of breach of fiduciary duty, estoppel, and the failure to provide full and fair hearing. He asserts that he is entitled to discovery to establish the merits of this claims. Plaintiff is incorrect.

The Supreme Court has long acknowledged that ERISA preemption is "clearly expansive." *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., Inc.*, 519 U.S. 316, 324 (1997). ERISA Section 514(a) provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The "relate to" standard is broadly construed. *Way v. Ohio Cas. Ins. Co.*, 346 F. Supp. 2d 711, 718 (D.N.J. 2004). "In areas where ERISA specifically legislates, including benefit claims and fiduciary

13

provisions with respect to the administration of benefit plans, state law is pre-empted." *Brainbuilders, LLC v. Ocean Healthcare Mgmt. Grp. Ben. Plan*, No. 20-2495, 2021 WL 949321, at *8 (D.N.J. Mar. 12, 2021). A plaintiff "cannot merely relabel their ERISA benefit claims as state law claims." *Id.* In turn, a plaintiff cannot seek discovery outside the administrative record in an effort to litigate such preempted claims. *Id.*

Here, Plaintiff's claims set forth in Counts II through IV are nothing more than a reiteration of his ERISA claims. Because these claims are likely preempted by ERISA, Plaintiff cannot premise a request for discovery on them.[5]

## CONCLUSION

The Plan at issue here gives Defendants discretion to interpret its terms; as such, the Court's review is limited to an arbitrary and capricious standard based on the administrative record. While Plaintiff seeks discovery outside that record, he has not identified any structural or procedural conflicts that would permit consideration of facts beyond the administrative record. Plaintiff's challenges to Defendants' exercise of discretion are cabined by the administrative review record,

---

[5] Plaintiff's cited cases in support of his request for discovery are all factually distinguishable. In *Baker v. Lukens Steel Co.*, 793 F.2d 509, 512 (3d Cir. 1986), the court considered affidavits on the issue of whether the plaintiffs had provided proof of injury resulting from the company's amendment of its pension plan to eliminate a special retirement provision—not on the reasonableness of the plan's decision to deny retirement benefits. In *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993), the court found that the issue of whether a misrepresentation by a pension benefits plan is material—a question not at issue here—is a mixed question of law and fact that warranted discovery. In *Novembre v. Local 584 Pension Trust Fund & Welfare Trust Fund*, 1981 WL 138042 (D.N.J. Feb. 17, 1981), the court did not discuss the availability of discovery regarding the plaintiffs' ability to carry over their respective pension credits from one Local to another. *Id.* at *6. In *Schlear v. Carpenters Pension & Annuity Fund of Philadelphia*, No. 22-1843, 2023 WL 3569971, at *8 (E.D. Pa. May 18, 2023), the court allowed discovery on plaintiff's allegation that the defendant inconsistently applied the plan terms in different benefits decisions involving similar circumstances, which is one of the identified "procedural irregularities" that gives rise to a right to limited discovery—an allegation not at issue here. Finally, in *Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991), the plan terms did not grant the administrator discretion to interpret ambiguous plan terms; consequently, the *de novo* standard applied and the court's review was not limited to the administrative record.

which may not be supplemented on appeal. Accordingly, the Court will deny Plaintiff's request for discovery.

      An appropriate Order follows.

s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:    Christine P. O'Hearn, U.S.D.J.