**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

STULTZ G. TAYLOR,

        Plaintiff,

      v.

SHEET METAL WORKERS'
NATIONAL PENSION FUND, *et al.*,

        Defendants.

No. 24-cv-04321

**OPINION**

---

**APPEARANCES**:

**Hanan M. Isaacs**
Hanan M. Isaacs, P.C.
P.O. Box 583
Kingston, NJ 08528

**Leonard A. Windish, Jr.**
Leonard A. Windish, P.C.
1835 Market Street, Suite 1215
Philadelphia, PA 19103

    *On behalf of Plaintiff.*

**Francis Xavier Nolan, IV**
Eversheds Sutherland (US) LLP
1114 Avenue of the Americas
40th Floor
New York, NY 10036

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

**INTRODUCTION**

This matter comes before the Court on Plaintiff Stultz G. Taylor's ("Taylor") motion for summary judgment, (ECF No. 54), and the cross-motion for summary judgment filed by Defendants Sheet Metal Workers' National Pension Fund ("NPF") and the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("Board," and jointly with NPF, "Defendants"), (ECF No. 56). Also before the Court is Defendants' motion to strike certain affidavits submitted by Taylor in support of his summary judgment motion. (ECF No. 64). The Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions to strike and for summary judgment are GRANTED, and Taylor's motion for summary judgment is DENIED.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Taylor is the owner of STS Sheetmetal Inc. ("STS"), and a longtime member of the Sheet Metal Workers' Union Local Numbers 43 and 27. (Pl.'s Statement of Material Facts ("Pl.'s SOMF"), ECF No. 63-1 at ¶¶ 1–2).[1] As a union member, he is a vested Participant in the NPF pension plan ("Plan"), which is a multiemployer pension plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(37)(A). (Defs.' Statement of Material Facts ("Defs.' SOMF"), ECF No. 67 at ¶¶ 1–2).

The Board is the Plan's fiduciary. (*Id.* ¶ 3). The Plan Document grants the Board "the sole and absolute power, authority and discretion to determine . . . the application and interpretation of the Plan Document; [and] entitlement to or amount of a pension . . . ." (*Id.* ¶ 5; *see* Plan Doc., ECF

---

[1] Unless otherwise noted, citations to the parties' statements of material facts also incorporate their underlying citations to the Administrative Record, to the extent those statements accurately reflect the record.

No. 52-1 at § 8.03(a)). Pursuant to the Plan Document, the Board has delegated its powers over the Plan to an Appeals Committee, which is comprised of one labor Trustee and one management Trustee. (Defs.' SOMF, ECF No. 67 at ¶ 6; *see* Plan Doc., ECF No. 52-1 at § 8.03(b)).

On December 9, 2018, when Taylor was nearly 59 years old, Taylor submitted a form application to NPF stating that he intended "to retire from [the] Local Union with the understanding that [he] will not be able to collect [his] pension until [he] reach[es] the age of 62 or at such time [he is] no longer the owner of STS," and that he "intend[ed] to continue operating STS" but that his duties there would involve "office work only." (Defs.' SOMF, ECF No. 67 at ¶¶ 7–13). Despite these stated intentions, Taylor also indicated that he wanted to apply for a pension effective January 1, 2019, and sought confirmation that he could continue as STS's owner, performing strictly clerical work, "without penalty." (*Id.*).

NPF first acknowledged Taylor's application on December 17, 2018. (*Id.* ¶ 14). Ten days later, on December 27, 2018, NPF staff emailed Taylor to clarify that although he was "retiring with the Local Pension," he was "not retiring with the National Pension Fund" because he would "continue to own [STS]." (*Id.* ¶ 15). NPF also sent Taylor a letter that same day stating that it had recharacterized his December 9 form application as a request "for information about Plan benefits," rather than an application for benefits. (*Id.* ¶ 16). That letter also set forth Taylor's then-current service credit and explained that, although he would receive full service credit at age 65, he might be eligible for early retirement once he reached age 55, which he already had. (*Id.* ¶¶ 17–20). At the same time, the letter made clear that Taylor's "credited service will be reviewed upon application for benefits under the terms of the Plan then in effect." (*Id.* ¶ 20). The December 27 letter also warned that a Participant could lose past service credit, or have benefits delayed until age 65, if he performed work in the sheet metal industry that was not covered by a union collective

3

bargaining agreement. (*Id.* ¶ 21). Finally, the letter instructed Taylor to submit a reactivation form, rather than a new application, when he decided to retire. (*Id.* ¶ 22).

The parties do not materially dispute that, from 2019 forward, Taylor continued to own STS and continued performing clerical or administrative work there, although they dispute various characterizations of that work and whether some of Taylor's additional factual assertions are supported by the Administrative Record. (*See id.* ¶¶ 9–10, 31; Pl.'s SOMF, ECF No. 63-1 at ¶¶ 3–4).

On December 7, 2021, Taylor submitted a reactivation form and applied for pension benefits effective January 1, 2022. (Defs.' SOMF, ECF No. 67 at ¶ 23). On December 17, 2021, NPF staff responded. (*Id.* ¶ 24). That letter stated that, under the Plan, a retiree between ages 62 and 65, like Taylor at the time, could work 40 hours or less per month if certain conditions were met, one of which being that a retiree could perform work that is covered by a Collective Bargaining Agreement ("CBA") (*i.e.*, "Covered Employment" under the Plan), or for a Related Organization or apprentice/training fund affiliated with the Union, without suspension of pension. (*Id.* ¶¶ 25–26; *see* Plan Doc., ECF No. 52-1 at § 8.06(b)(1)). Accordingly, the letter also requested that Taylor submit a notarized statement swearing that he would not work more than 40 hours per month effective January 1, 2022, in Covered Employment. (Defs.' SOMF, ECF No. 67 at ¶ 24). On January 6, 2022, Taylor returned the requested affidavit, swearing that he would not work more than 40 hours in Disqualifying Employment in any calendar month as of his pension effective date. (*Id.* ¶ 28).

NPF continued to investigate Taylor's eligibility into 2022. On May 2 of that year, following a phone call with Taylor, NPF staff sent another letter reiterating the contents of their December 17, 2021 letter related to the work restrictions that retirees between the ages of 62 and

4

65 were subject to. (*See id.* ¶¶ 29–30). The letter stated that, because Taylor had attained age 62, he was permitted to work up to 40 hours per month in Covered Employment and collect pension, even with Taylor's continued ownership of STS. (*Id.* ¶ 32). However, the letter requested information seeking to "verify [Taylor's] retirement." (*Id.* ¶ 33). NPF therefore sought: a detailed job description of the work Taylor performed from 2019 through 2021; the name of the person at the company who performed Taylor's former job duties since January 1, 2022; and details as to the work Taylor continued to perform at STS on and after January 2022. (*Id.* ¶ 34). Taylor responded in a manner consistent with his prior submissions, indicating that: his work from 2019 through 2021 was entirely "Clerical/Administrative"; that his daughter and STS staff performed his job duties since January 1, 2022; and that he will continue to perform "Clerical/Administrative" functions at STS after January 1, 2022. (*Id.* ¶ 36).

In a May 23, 2022 letter, NPF staff denied Taylor's request for an Early Retirement Pension effective January 1, 2022, concluding that his continued work for STS—described as "Clerical/Administrative"—was a non-bargaining-unit position and therefore constituted Disqualifying Employment under Sections 8.06(d)(1)(A) and (E) of the Plan. (*Id.* ¶¶ 38–46). The letter explained that, under Section 5.01, a Participant is "retired" only if he has ceased working in both Covered Employment and Disqualifying Employment, and that Taylor did not satisfy that requirement because he remained a principal of STS and continued working there after January 1, 2022. (*Id.* ¶¶ 41–45).

Pursuant to his rights under the Plan, Taylor appealed this decision to the Appeals Committee on July 8, 2022. (*Id.* ¶¶ 53–57). On April 6, 2023, NPF staff notified Taylor that the Appeals Committee had denied his appeal. (*Id.* ¶¶ 81–82). Like the original NPF staff denial, the Appeals Committee found that Taylor's work for STS was Disqualifying Employment because,

5

pursuant to the Plan, it was "employment with a Contributing Employer." (*Id.* ¶¶ 83–85; *see* Plan Doc., ECF No. 52-1 at § 8.06(d)(1)(A)). And because Taylor was engaged in Disqualifying Employment, the Appeals Committee affirmed the NPF staff's finding that Taylor was not retired under the Plan pursuant to Section 5.01. (*See* Defs.' SOMF, ECF No. 67 at ¶ 84; Plan Doc., ECF No. 52-1 at § 5.01). Moreover, the Appeals Committee found that "no [other] Plan provisions [] provided an exception" for the clerical work Taylor was engaged in at STS. (Administrative Record ("AR"), ECF No. 25 at 3).

After the Appeals Committee affirmed the denial of benefits, Taylor filed this action. (*See* Compl., ECF No. 1). The Complaint asserts four counts: Count I for failure to provide ERISA benefits; Count II for breach of fiduciary duty; Count III for estoppel; and Count IV for failure to provide a full and fair review. (*See id.* ¶¶ 73–117). On September 5, 2025, the parties filed cross-motions for summary judgment. (ECF Nos. 54, 56). On October 17, 2025, Defendants moved to strike the affidavits submitted in support of Taylor's summary judgment motion. (ECF No. 64; *see* ECF Nos. 55, 62-1 (affidavits subject to Defendants' motion to strike)). Each motion is opposed.

## II.    LEGAL STANDARDS

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the

non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by h[is] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations and citation omitted). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Celotex Corp.*, 477 U.S. at 322.

### B. Standard of Review for Benefit Denials Under ERISA

Taylor has brought this action under, *inter alia*, ERISA Section 502(a)(1)(B), which permits a participant or beneficiary of a covered policy to bring a civil action to recover the benefits due under the terms of the policy. *See* 29 U.S.C. § 1132(a)(1)(B). Generally, the Court must review the denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations," the Court must review its decision "under an abuse-of-discretion (or arbitrary and capricious) standard." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (citations omitted).[2]

Here, the parties do not dispute that the arbitrary and capricious standard of review applies in this case. (*See* Am. Br. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Br."), ECF No. 61 at 14 ("Per ERISA, § 502(a)(1)(B), a denial of benefits should be reviewed under the 'arbitrary and capricious' standard, when the Plan (as here) vests discretionary authority in its administrators."); Defs.' Mem. of L. in Supp. of Mot. for Summ. J. ("Defs.' Br."), ECF No. 56-1 at 22 (discussing the arbitrary and capricious standard of review)). Under this standard, "[a]n administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fleisher v. Standard Ins. Co.,* 679 F.3d 116, 121 (3d Cir. 2012) (quotations omitted). "A decision is supported by substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000) (quotations omitted).

The arbitrary and capricious standard of review "is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (internal quotations omitted). Although "the arbitrary and capricious standard is extremely deferential, [i]t is not . . . without some teeth. Deferential review is not no review, and deference need not be abject." *Kuntz v. Aetna*

---

[2] The abuse-of-discretion standard and the arbitrary and capricious standard are used "interchangeably" in ERISA cases. *Viera*, 642 F.3d at 413 n.4.

*Inc.*, No. 10-877, 2013 WL 2147945, at *4 (E.D. Pa. May 17, 2013) (citations and quotations omitted); *see Connelly v. Reliance Standard Life Ins. Co.*, No. 13-5934, 2014 WL 2452217, at *4 (E.D. Pa. June 2, 2014) ("Although the arbitrary and capricious standard is highly deferential, the court must still consider the quality and quantity of the [] evidence and the opinions on both sides of the issues, so as to avoid rendering courts 'nothing more than rubber stamps for any plan administrator's decision.'") (quoting *Glenn v. MetLife*, 461 F.3d 660, 674 (6th Cir. 2006), *aff'd sub nom. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)).

Further, under the arbitrary and capricious standard of review, courts must limit their review of the plan administrator's denial of benefits to only the evidence that was before the administrator when the decision was made. *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997) (finding that under an arbitrary and capricious standard of review, the court looks to the record as a whole, and that "whole" record consists of evidence that was before the administrator when the decision being reviewed was made), *abrogated on other grounds as recognized by Cottillion v. United Refin. Co.*, 781 F.3d 47, 55 (3d Cir. 2015). However, this limitation refers to the merits of the administrator's decision. This general restriction does not prohibit a district court from considering extra-record materials related to an administrator's conflict of interest or any procedural irregularities that occurred during the reviewing process. *See Otto v. W. Pa. Teamsters & Emps. Pension Fund*, 127 F. App'x 17, 21 n.7 (3d Cir. 2005) (stating "[e]vidence beyond the administrative record may in certain circumstances be relevant and admissible as to issues . . . such as trustee conflict of interest, bias, or a pattern of inconsistent benefit decisions").

## III.    **DISCUSSION**

The Court must necessarily first address Defendants' motion to strike affidavits relied upon by Taylor in support of his motion for summary judgment and in opposition to Defendants' motion

in order to define the scope of the record. That motion is granted. Turning to the merits, the Court finds that Defendants are entitled to summary judgment and grants their motion. Taylor's competing summary judgment motion is therefore denied.

### A. Motion to Strike

Defendants seek to strike two affidavits submitted by Taylor in connection with his summary judgment motion.[3] The first, filed contemporaneously with Taylor's motion, is a twenty-page affidavit setting forth Taylor's biographical details with citations to the Administrative Record. ("Summary Judgment Affidavit"). (ECF No. 55). Taylor filed the second affidavit on October 17, 2025 "in support of [his] request to supplement [his] Rule 26 disclosure" ("Supplemental Affidavit"). (ECF No. 62-1 at ¶ 1). That affidavit describes a September 4, 2025, phone call Taylor had with a representative from NPF, wherein he was informed of his benefits, and also affixes a July 23, 2025 letter informing him of the same. (*See id.*).

The Court will strike both affidavits. In ERISA benefit denial cases such as this one, the Court's review "is confined to the information contained in the administrative record." *Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 271 (3d Cir. 2021). This record "cannot be supplemented during litigation," save for a narrow exception. *Johnson v. UMWA Health & Ret. Funds*, 125 F. App'x 400, 405 (3d Cir. 2005) (citing *Mitchell*, 113 F.3d at 440). Only in cases

---

[3] Taylor argues that Defendants used the wrong procedural vehicle by filing a motion to strike instead of lodging an objection under Rule 56(c)(2). (*See* ECF No. 70 at 5–6). That argument elevates form over substance and is otherwise meritless. Although Rule 56(c)(2) permits a party to object that summary judgment material cannot be presented in admissible form, nothing in the Rule forbids a motion to strike. More importantly, this dispute does not concern ordinary evidentiary objections as to admissibility at trial as contemplated by Rule 56(c)(2); it concerns whether affidavits outside the administrative record may be considered at all in this ERISA case. The Court therefore considers Defendants' motion to strike to be an appropriate vehicle to consider whether Taylor's affidavits can be considered when evaluating the merits of the claims.

where a claimant alleges "potential biases and conflicts of interest that are not found in the administrator's record" may a court permit extra-record evidence. *Id.* at 406; *see also Otto*, 127 F. App'x at 21 n.7 ("Evidence beyond the administrative record may in certain circumstances be relevant and admissible as to issues that were not before the plan administrator—such as trustee conflict of interest, bias, or a pattern of inconsistent benefits decisions.").

Here, Taylor makes no allegations—in his Complaint or otherwise—that there existed any conflicts of interest or bias in the adjudication of his benefits application. The affidavits are therefore plainly extra-record evidence that the Court cannot consider.[4] *See Zurawel v. Long Term Disability Income Plan*, No. 07-5973, 2010 WL 11570428, at *1 (D.N.J. July 6, 2010) (granting plaintiff's motion to strike defendant's affidavit related to an ERISA summary judgment motion where defendant argued that the affidavit was meant to "simplify[]" the administrative record); *Grimes v. Prudential Fin., Inc.*, No. 09-419, 2010 WL 2667424, at *1 (D.N.J. June 29, 2010) (considering a motion to strike plaintiff's affidavit in an ERISA benefits case, and refusing to rely on the affidavit because the plaintiff did not raise any of the discovery exceptions).

Accordingly, Defendants' motion to strike is granted.

## B. Summary Judgment Motions

The Complaint asserts four counts, each ostensibly stemming from Defendants' denial of benefits. But this case ultimately turns on Count I, which alleges that Defendants arbitrarily and

---

[4] Portions of the Supplemental Affidavit are also improper under Local Rule 7.2(a). That Rule states that affidavits "shall be restricted to statements of fact within the personal knowledge of the signatory. Argument of the facts and the law shall not be contained in such documents. Legal arguments and summations in affidavits will be disregarded by the Court . . . ." L. Civ. R. 7.2(a). The Supplemental Affidavit goes beyond factual information and cites to Defendants' brief and states that certain comments by "Ms. Elkins" were "completely inconsistent with the Plan" and "incorrect" and "misleading." (ECF No. 62-1 at ¶ 11). Such statements are impermissible argument and would not be considered even if the Court denied Defendants' motion to strike.

capriciously denied Taylor benefits. The Court begins there and grants Defendants summary judgment on that claim. The remaining Counts all otherwise fail as a matter of law. As such, the Court grants Defendants summary judgment on those claims as well. With Defendants entitled to summary judgment on all Counts, Taylor's competing summary judgment motion is denied.

1. **Defendants are Entitled to Summary Judgment on Count I Because the Appeals Committee's Denial of Benefits was Not Arbitrary or Capricious**

The Court reviews the Appeals Committee's denial of benefits under an arbitrary and capricious standard because the Plan grants the Committee "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire*, 489 U.S. at 115; (*see* Plan Doc., ECF No. 52-1 at §§ 8.03(a) (giving the Board "the sole and absolute power, authority and discretion to determine . . . the application and interpretation of the Plan Document; [and] (3) entitlement to or amount of a pension . . . ."), 8.03(b) (authorizing delegation of such authority to the Appeals Committee)). Under this highly deferential standard of review, the Court may not displace the Appeals Committee's interpretation with its own so long as its reading is rational and consistent with the Plan's text. *Viera*, 642 F.3d at 413. Applying that standard here, Defendants are entitled to summary judgment on Count I.

The Appeals Committee concluded that Plaintiff was not "retired" under the Plan, and therefore not entitled to benefits, explaining:

> Section 5.01 states that a Participant is "retired" within the meaning of the Plan Document, if he has ceased working in Covered Employment, as well as in any Disqualifying Employment, and such cessation of work is intended to be permanent. Section 8.06(d)(1) defines Disqualifying Employment to include employment with a Contributing Employer . . . . The Committee deemed that Mr. Taylor's employment with STS Sheet Metal was Disqualifying Employment as it is employment with a Contributing Employer and noted that he has continued to be employed by STS Sheet Metal.

(AR, ECF No. 25 at 3).

The Court This determination is supported by the Plan's text and the Administrative Record. Only

"retired" persons are eligible for pension benefits under the Plan. (Plan Doc., ECF No. 52-1 at § 5.01 ("A Participant's eligibility to receive benefits is conditioned upon his retirement . . . .")). A Participant is deemed "retired" only "if he has ceased working in Covered Employment, as well as in any Disqualifying Employment, and such cessation of work is intended to be permanent." (*Id.*). A Participant will also be treated as retired "if he only performs work that would result in the suspension of benefits as Disqualifying Employment but for an exception contained in Section 8.06, and he otherwise satisfies the conditions of the Plan Document concerning post-retirement employment." *(Id.)*.

The Committee did not find, nor does Taylor argue they should have, that Taylor's clerical work was "Covered Employment." Instead, Taylor argues that his clerical work does not qualify as "Disqualifying Employment" or, in the alternative, that he falls within an exception noted in Section 8.06. (*See* Pl.'s Opp. Br., ECF No. 62 at 10–14).

The Committee's determination that Taylor's clerical work qualified as "Disqualifying Employment" is supported by the Plan's text. Under the Plan, Disqualifying Employment is defined to include, *inter alia*, "employment with any Contributing Employer." (ECF No. 52-1 at § 8.06(d)(1)(A)). It is undisputed that STS is a Contributing Employer. (Defs.' SOMF, ECF No. 67 at ¶ 69). And the clerical work Taylor performed for STS is certainly "employment" on its face, meaning it qualifies as Disqualifying Employment under the Plan. Despite the Plan's broad, yet express and unambiguous, terms, Taylor argues that "employment" should be limited to "trade work." (*See* Pl.'s Opp. Br., ECF No. 62 at 4, 10–13). This position finds no support in the Plan text. The relevant Plan provision is unqualified and, even if under a normal standard of review the Court could read such a limitation into the Plan, the Court cannot disturb the Appeals Committee's interpretation of the Plan where, as here, it is otherwise reasonable from the plain text. Taylor

13

therefore was not "retired" within the meaning of the Plan because his clerical work for STS is Disqualifying Employment, and the Appeals Committee did not abuse its discretion in making such determination.

Nor did the Appeals Committee abuse its discretion in determining that Taylor was not retired under the Section 8.06 exceptions. (*See* AR, ECF No. 25 at 4 (finding that "no [other] Plan provisions that provided an exception for this type of employment.")). Section 8.06(b)(1) sets out the conditions upon which certain "Pensioner[s]" may return to work while still remaining pension-eligible:

> [I]f a Pensioner who has attained age 62 works in Disqualifying Employment before he attains Normal Retirement Age and such work is either (i) covered by a Collective Bargaining Agreement between the Union and the Pensioner's Employer, or (ii) performed for a Related Organization or a joint apprenticeship training committee that is affiliated with the Union, his monthly benefit will be suspended under Section 8.06(a) only for any month in which he performs, or is paid for, more than 40 hours of such work.

(Plan Doc., ECF No. 52-1 at § 8.06(b)(1)).[5] In other words, if Taylor worked in Disqualifying Employment—which he did by performing clerical work—after age 62 but before reaching Normal Retirement Age (65), he may remain pension eligible *only if* such work did not exceed forty hours per month *and* such work was either covered by a CBA (*i.e.*, "Covered Employment"), or performed for a Related Organization or a joint apprenticeship training committee affiliated with the Union.

Here, although Taylor indeed limited his clerical work to less than forty hours per month,

---

[5] There are other subsections of Section 8.06(b)(1) that also create limited safe harbors, such as for example working directly for NPF (Section 8.06(b)(4)), but Taylor does not argue they apply. Moreover, Taylor's position on the forty-hour exception is not entirely consistent across his briefing. For example, in his opposition brief, he appears to argue that the exception does not apply, even though, if it did, it could provide an additional path to benefits. (ECF No. 62 at 13). But in his opening summary judgment brief, he appears to invoke that same exception. (ECF No. 61 at 9). Obviously, such positions are inherently inconsistent. Even so, because the parties dispute whether the provision applies, the Court addresses it.

such work plainly does not satisfy Section 8.06(b)(1) because it is undisputed that clerical work is not covered by the CBA. (*See* Defs.' SOMF, ECF No. 67 at ¶ 67 (Taylor's response stating that his "work was purely clerical and administrative" and "not covered by a CBA")). Nor is the clerical work performed for STS work for a "Related Organization or a joint apprenticeship training committee that is affiliated with the Union." Accordingly, as the Appeals Committee reasonably found, Taylor does not qualify for any Section 8.06 exception, and is thus not "retired" under any of the Plan's provisions.

Because the Appeals Committee did not abuse its discretion in finding Taylor ineligible for benefits, the Court grants Defendants summary judgment on Count I. Taylor's competing summary judgment motion is accordingly denied on this claim.

### 2. Count II Fails as a Matter of Law

Count II generally asserts a claim for ERISA breach of fiduciary duties against the Board and Jane Doe defendants.[6] (Compl., ECF No. 1 at ¶¶ 79–93). Taylor bases this claim on alleged misrepresentations of the Plan Document and, generally, from the denial of his benefits. (*Id.* at ¶ 90). The Complaint fails to identify, however, which ERISA provision Count II relies on. Taylor's briefing does not add much clarity. Nevertheless, the Court can surmise that Taylor seeks to invoke the fiduciary duty civil enforcement provisions of ERISA § 502(a)(2) and (a)(3). *See* 29 U.S.C. §§

---

[6] Count II does not allege that NPF was a Plan fiduciary, and therefore does not state a breach of fiduciary duty claim against NPF. (*See* Compl., ECF No. 1 at ¶ 80 ("The Board of Trustees and Jane Does, 1-10, are fiduciaries under the Fund pursuant to ERISA.")). However, Taylor's brief attempts to expand Count II to reach NPF. (*See* Pl.'s Br., ECF No. 61 at 39 (arguing "[NPF] acted in a fiduciary capacity when responding to Plaintiff's inquiries and applications for early retirement benefits.")). But "[a] movant may not seek relief beyond the scope of its initial pleadings[,]" so the Court will not treat Count II as asserted against NPF. *Everest Reinsurance Co. v. Century Indemnity Co.*, No. 11-2789, 2011 WL 5196717, at *3 (D.N.J. Oct. 31, 2011); *see also Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991) (noting that the ERISA "plan itself cannot be sued for breach of fiduciary duty.").

1132(a)(2)–(3).

Whatever the statutory basis, Count II fails as a matter of law because neither provision authorizes the type of claim Taylor asserts—an individual claim for benefits. (*See* Compl., ECF No. 1 at ¶¶ 93 & "Wherefore") (seeking "unpaid benefits, to enforce his rights to future benefits under the terms of the Plan Documents, for interest, for attorneys' fees and costs, and such other relief as this Honorable Court deems equitable and just.")). Section 502(a)(2) authorizes civil actions "by a participant, beneficiary or fiduciary for appropriate relief under" the ERISA fiduciary duty provisions found in 29 U.S.C. § 1109. 29 U.S.C. §§ 1132(a)(2). It is well settled, however, that recovery under this provision inures to the benefit of the plan, and not to an individual. *See Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007) (citing *Mass. Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). Thus, where a plaintiff "seeks to recover benefits allegedly owed to him in an individual capacity, his claims for breach of fiduciary duty . . . are not authorized pursuant to Section 502(a)(2)." *Boyles v. Am. Heritage Life Ins. Co.*, No. 15-274, 2016 WL 4031295, at *8 (W.D. Pa. July 26, 2016). Therefore, construed as a claim under Section 502(a)(2), Count II fails as a matter of law.

Under Section 502(a)(3) Taylor fares no better. That provision allows a plan participant or beneficiary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "obtain other appropriate equitable relief" to "redress" violations or "enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C § 1132(a)(3). Although this provision clearly contemplates suits brought by plan "participants" like Taylor, the remedies sought must be equitable in nature. *See Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298 (3d Cir. 1993); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 258 n.8 (1993) (explaining that "equitable relief must mean something less than all relief."). Here, by seeking in

16

Count II to recover past and future "unpaid benefits," as well as, "interest" and "attorneys' fees and costs," (Compl., ECF No. 1 at ¶¶ 93 & "Wherefore"), Taylor plainly seeks individualized remedies that are legal, and not equitable, *see Tannenbaum v. UNUM Life Ins. Co. of Am.*, No. 03-1410, 2004 WL 1084658, at *5 (E.D. Pa. Feb. 27, 2004) (rejecting plaintiff's demand for restitution of benefits due under a plan and unpaid based on breach of fiduciary duty because such damages are a legal, rather than equitable remedy); *Ranke v. Sanofi-Synthelabo, Inc.*, No. 04-1618, 2004 WL 2473282, at *7 (E.D. Pa. Nov. 3, 2004) (finding a request for reinstatement of benefits related to alleged misrepresentations is a form of "non-equitable money damages" and is not an appropriate remedy authorized by 502(a)(3)), *aff'd*, 436 F.3d 197 (3d Cir. 2006). Count II construed as a Section 502(a)(3) claim therefore fails as a matter of law because Taylor seeks relief not authorized by that provision.

Accordingly, regardless of how it is framed, Count II fails as a matter of law. The Court therefore grants Defendants summary judgment and denies Taylor's competing summary judgment motion on Count II.

### 3. Counts III and IV Fail as a Matter of Law

Counts III and IV are labeled as claims for "estoppel" and "failure to provide a full and fair review," respectively. (*See* Compl., ECF No. 1 at 14–16 (cleaned up)). But, as with Count II, neither claim identifies a specific cause of action under ERISA.

To the extent Taylor asserts these claims under common law, they are preempted and fail as a matter of law because both "'relate to' an employee benefit plan and therefore fall under

ERISA's express pre-emption clause, § 514(a)."[7] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *see* 29 U.S.C. § 1144(a).

Construed as ERISA claims, Counts III and IV fail as well. As to the Count III estoppel claim, the Court assumes Taylor again seeks to invoke Section 502(a)(3)'s equitable relief provisions. As noted, Section 502(a)(3) indeed authorizes "appropriate equitable relief" for violations of ERISA. *See* 29 U.S.C. § 1132(a)(3). But "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). In deciding whether the relief sought is properly equitable under § 502(a)(3), "the Supreme Court has cautioned that a court must look past the label attached by the plaintiff." *Miller v. Mellon Long Term Disability Plan*, 721 F. Supp. 2d 415, 423 (W.D. Pa. 2010) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)). Where a claim "is essentially a claim for benefits expressed in equitable language," it fails as a matter of law because it may be brought only under Section 502(a)(1)(B). *Id.* (quotations omitted).

Looking past the label here, Count III is simply a claim for benefits expressed in equitable language. Taylor brings Count III to recover "unpaid benefits, to enforce his rights to future benefits under the terms of the Plan Documents, for interest, for attorneys' fees and costs, and such

---

[7] Additionally, Taylor's briefing largely fails to address Counts III and IV. On these claims, Taylor argues only that this Court's prior discovery orders "never barred" him from asserting them and that they therefore should "remain part of Plaintiff's case." (Pl.'s Opp. Br., ECF No. 62 at 18). Under these circumstances, it would likely be appropriate to deem both claims abandoned. *See Eivich v. E. Greenwich Twp.*, No. 20-06851, 2025 WL 2319488, at *7 (D.N.J. Aug. 12, 2025) (granting summary judgment on a claim the plaintiff failed to defend in opposing the motion). Nevertheless, the Court considers them here on the merits.

other relief as this Honorable Court deems equitable and just." (*See* Compl., ECF No. 1 at ¶¶ 94–108 & "Wherefore"). Because Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), already provides a mechanism for ordering a plan to pay benefits due, and Taylor already brings in Count I a claim under that provision, Count III is in substance, a second bite at Count I. It therefore fails as a matter of law. *See Miller*, 721 F. Supp. 2d at 423–24 (dismissing plaintiff's claim for equitable relief under Section 502(a)(3) because it was essentially duplicative of a claim for money damages under Section 502(a)(1)(B)); *Dupont v. Sklarsky*, No. 08-1724, 2009 WL 776947, at *9 (D.N.J. Mar. 20, 2009) (dismissing plaintiff's claim under Section 502(a)(2) because it did not seek "additional relief that would not be provided through his 502(a)(1)(B) claim"); *Hansen v. Int'l Painters & Allied Trades Indus. Pension Plan*, No. 16-5028, 2017 WL 4539217, at *14 (E.D. Pa. Oct. 11, 2017) (granting summary judgment to defendants, and denying it to plaintiff, where, "[i]n Counts III and IV, Plaintiff seeks remedies that are identical to those prayed for in Counts I and II" which were brought under Section 1132(a)(1)(B) and 1132(c)); *Clark v. Feder Semo & Bard, P.C.*, 527 F. Supp. 2d 112, 117 n.1 (D.D.C. 2007) (finding plaintiff's claim for "such declaratory, legal, equitable and remedial relief as the Court deems appropriate" to ensure her receipt of all benefits due was essentially "a claim for benefits expressed in equitable language," and thus, failed to seek appropriate equitable relief under § 1132(a)(3)).

Count IV, liberally construed, meets the same fate for a different reason. It appears to invoke ERISA Section 503, which requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" and provide a participant's claims "a full and fair review." 29 U.S.C. § 1133. However, while a plan's compliance with Section 503 may be "probative of whether the

19

decision to deny benefits was arbitrary and capricious," Section 503 itself does not provide an independent cause of action. *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 850–51 (3d Cir. 2011); *see Galman v. Sysco Food Servs. of Metro N.Y., LLC*, No. 13-7800, 2016 WL 1047573, at *5 n.4 (D.N.J. Mar. 16, 2016) ("Section 503 does not create an independent right of action."); *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015) (same), *aff'd sub nom. Piscopo v. Pub. Serv. Elec. & Gas Co.*, 650 F. App'x 106 (3d Cir. 2016). Without a source to support an independent cause of action, Count IV fails as a matter of law. *See Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 13-03057, 2013 WL 5780815, at *9 (D.N.J. Oct. 25, 2013); *Advanced Orthopedics & Sports Med. Inst. ex rel. M.S. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 20-13243, 2022 WL 13477952, at *12 (D.N.J. Oct. 21, 2022).

In sum, Counts III and IV cannot proceed under any theory Taylor advances. To the extent they are common law claims, they are preempted by ERISA. To the extent they are ERISA claims, Count III is duplicative of Count I, and Count IV fails because Section 503 does not create an independent cause of action. The Court therefore grants Defendants summary judgment on both Counts, and accordingly denies Taylor's summary judgment motion on those claims.[8]

---

[8] Taylor's alternative request for discovery pursuant to Rule 56(d) is denied. (*See* Pl.'s Br., ECF No. 61 at 44). He purports to invoke Rule 56(d) only if the Court concludes that unresolved factual issues prevent disposition of the parties' cross-motions on the present record. (*Id.*). First, that is procedurally improper and not the purpose of Rule 56(d). Rule 56(d) requires the non-moving party to show by affidavit or declaration that for specified reasons it cannot present facts essential to justify its opposition. FED. R. CIV. P. 56(d). No such showing has been made here. In any event, this case concerns the denial of benefits under an ERISA plan that vests discretionary authority in the administrator, and the Court's review is therefore limited to the Administrative Record that was before the Appeals Committee when it rendered its decision. On this record, and absent any showing of a conflict of interest, bias, or similar circumstance justifying extra-record discovery, Rule 56(d) provides no basis to permit Taylor to conduct further discovery to embark upon the proverbial fishing expedition and otherwise delay resolution of this case. Indeed, the timing of the filing of dispositive motions in this case was reached by agreement of the parties and jointly proposed. (*See* ECF Nos. 49, 50).

## **CONCLUSION**

For all of these reasons, Defendants' motions are granted. The motion to strike is granted because the affidavits Taylor submitted in support of summary judgment fall outside the Administrative Record and therefore cannot be considered by the Court in resolving this case on the merits. Defendants' motion for summary judgment is also granted because the Appeals Committee did not abuse its discretion in denying Taylor's claim for early retirement benefits under the Plan, and Taylor's remaining claims for breach of fiduciary duty, estoppel, and failure to provide a full and fair review either fail as a matter of law or are duplicative of his claim for benefits. Taylor's competing motion for summary judgment is therefore denied. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**